### PATRONS–OXFORD MUTUAL INSURANCE COMPANY

v.

### Bernard DODGE and Victor Mahar.

Supreme Judicial Court of Maine.

Argued Sept. 9, 1980.

Decided March 12, 1981.

Charles E. Gilbert, III (orally), Vafiades, Brountas & Kominsky, Bangor, for plaintiff.

Francis J. Hallissey (orally), Machias, for Dodge.

Twitchell, Gray & Linscott, Frederick J. Badger, Bangor, for Mahar.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

WERNICK, Justice.

Defendant Bernard R. Dodge has appealed from a judgment entered in the Superior Court (Washington County) in an action in which Patrons-Oxford Mutual Insurance Company is the plaintiff, and one Victor Mahar is joined as another defendant. The plaintiff sought a declaratory adjudication that it is not under a duty to afford Dodge, as its insured, a defense to a civil action Mahar had brought against Dodge. The Superior Court decided that plaintiff has no such obligation to Dodge.

The facts are undisputed. Plaintiff company insured Dodge under a homeowner's liability policy providing foundational "personal liability" coverage as follows:

"COVERAGE E—PERSONAL LIABILITY

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to *pay as damages because of bodily injury or prop-*

*erty damage,* to which this insurance applies, caused by *an occurrence.* This Company shall have the right and *duty,* at its own expense, *to defend any suit against the Insured seeking damages on account of such bodily injury or property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient. This Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of this Company's liability has been exhausted by payment of judgments or settlements." (emphasis added)

The policy defined the key concept of "occurrence" as

"an *accident,* including injurious exposure to conditions, which *results,* during the policy term, in *bodily injury* or property damage." (emphasis added)

Among specified "exclusions" from the foundational personal liability coverage is one reading:

"*This policy does not apply:*

"*1. Under Coverage E—Personal Liability . . . :*

\*       \*       \*       \*       \*       \*

"*f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.*"

On July 16, 1977 Dodge fired a shotgun, in consequence of which Victor Mahar was shot and suffered serious bodily injury. Criminally prosecuted for the shooting, Dodge was found guilty by a jury of having committed "aggravated assault" against Mahar, in violation of 17–A M.R.S.A. § 208(1)(B) (Supp.1977).[1] This Court affirmed the judgment of conviction. *State v. Dodge,* Me., 397 A.2d 588 (1979).

Mahar, meanwhile, had instituted a civil action against Dodge to recover damages for his bodily injuries. The complaint asserted three alternative grounds of liability: battery, negligence and gross negligence.

---

1. As pertinent, the statute provides:

"*1.* A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:

\*       \*       \*       \*       \*       \*

"*B.* Bodily injury to another with use of a dangerous weapon; . . . ."

Plaintiff insurance company brought the present action for declaratory judgment to ascertain whether the homeowner's policy it had issued to Dodge obligated it to afford Dodge a defense against Mahar's suit. Plaintiff's contention was that it owed no such duty. One reason for plaintiff's position was collateral estoppel, stated in plaintiff's words as follows:

"The jury verdict and judgment entered thereon in the criminal case of *State v. Bernard Dodge*, arising out of the same incident as the civil action between Mahar and Dodge, establish with binding effect that the actions of Dodge in shooting Mahar, fall within the policy exclusion for damage which is either expected or intended from the standpoint of the Insured." [2]

Relying on *Hossler v. Barry*, Me., 403 A.2d 762 (1979), in which this Court decided that applicability of collateral estoppel does not depend on whether there is a mutuality of estoppel, the presiding justice agreed with plaintiff's position. He ordered entry of judgment adjudicating that plaintiff insurance company was not under a duty to afford Dodge a defense to Mahar's civil action against him.

We disagree with this conclusion. We therefore sustain defendant Dodge's appeal, set aside the judgment of the Superior Court and remand the case for further appropriate proceedings in the Superior Court.

It was rationally open to the jury which convicted Dodge of aggravated assault upon Mahar to find that Dodge had violated 17–A M.R.S.A. § 208(1)(B) by having used the shotgun "recklessly", thereby to cause bodily injury to Mahar. Hence, as to a claimed applicability of collateral estoppel, the determinative inquiry is whether Dodge's having "recklessly" caused bodily injury to Mahar is *necessarily* comprehended within the policy's "exclusion" for bodily injury "either expected or intended from the standpoint of the Insured."

We first investigate the meaning of "expected or intended from the standpoint of the Insured."

The insurance industry began to use this phrase in policies affording a general coverage for personal liability as of approximately 1966, when a "major revision" was undertaken of what had been, since 1940, an essentially standardized policy. *See* 7A Appleman, *Insurance Law and Practice* (Berdal ed.), Section 4491. Prior to 1966, the language employed to achieve a similar "exclusion" objective had been, generally, "bodily injury ... caused intentionally by or at the direction of the insured."

The courts had experienced difficulties with this latter language insofar as it was being used to clarify the concepts of "accident" or "accidental means", as those concepts appeared in policies prior to 1966. One of the problems became manifest in *Sontag v. Galer*, 279 Mass. 309, 181 N.E. 182, 183–4 (1932). In that case the court rejected the view that "caused intentionally", as an amplification of the circumstances that would constitute an "accident" or "accidental means", signifies that the perspective is to be "from the ... standpoint" of the victim. In the court's words:

"It is the state of the 'will of the person by whose agency it [the injury] was caused' rather than that of the injured person which determines whether an injury was accidental."

In 7A Appleman, *Insurance Law and Practice* (Berdal ed.) Section 4492.02, at 27, this approach is characterized as "a form of punishment to the wrongdoer"; it "ignores the fact that insurance also is for the benefit of injured victims of accidents." For this reason, in the language of the Appleman text, other courts "consider[ed] the resulting injury from the point of view of the victim", and

"[i]f it was accidental from that point of view, the loss will be covered by the liability insurance issued to the actor."

---

**2.** The other reason plaintiff assigned was that Dodge had failed to give timely notification of loss. The presiding justice did not address this

contention, choosing to decide the case solely on the ground of collateral estoppel.

Illustrative of this latter approach are *Lumbermens Mutual Insurance Company, Mansfield, Ohio v. Blackburn*, Okl., 477 P.2d 62 (1970); *City of Burns v. Northwestern Mutual Insurance Company*, 248 Or. 364, 434 P.2d 465 (1967); and *State Farm Mutual Automobile Insurance Company v. Worthington*, 405 F.2d 683 (8th Cir. 1968); *cf. Knight v. L. H. Bossier, Inc.*, 118 So.2d 700 (La.App.1960).

It would appear that the change of language now under scrutiny, which emerged from the 1966 "revision" undertaking, had reference to this disagreement as to perspective, and that one of its purposes was to make more specific the concept of "accident" contained in the definition of "occurrence." The phrasing "from the standpoint of the Insured" would seem designed to make plain that the "accident" component of an "occurrence" is to be evaluated from the perspective of the insured rather than of the injured victim.

Despite this purported clarification, the courts continued to encounter difficulties. The focal point was a controversy, existing prior to 1966 and still carrying over, regarding ambiguity in the phrase "caused intentionally", as precipitated more particularly by the distinction between the act of the insured and the bodily injury resulting from it. Does "caused intentionally" signify only that the insured intended to do the particular act from which the bodily injury resulted, or does it mean, in addition, that the insured must have had the conscious objective to bring about the bodily injury in fact resulting from his act.[3] The ambiguity is now compounded because in the phrasing used after 1966, and here at issue, the word "intended" is supplemented by the word "expected", thereby to suggest that within the contemplation of the policy "accident" is negated not only where bodily injury is "intended" but also where it is "expected."

Against this background, we conclude that in specific relation to the distinction between an act of the insured and the bodily injury resulting from such act, the language of the policy under consideration, which excludes coverage as "to bodily injury . . . either expected or intended from the standpoint of the Insured", is ambiguous in its meaning.

Among various meanings this language may have, one reasonable meaning is that it connotes no *objective normative* criterion but rather refers *only* to the *actual subjective* state of mind of the insured in respect to *results* of his intentional acts.

Thus the language at issue is fairly open to the interpretation that coverage is not "excluded" if, notwithstanding what the average reasonable person in the position of the insured would have foreseen as a consequence of the insured's act, the insured himself did not have the *actual subjective* "intention" to cause, or the *actual subjective* "expectation" that a result of his conduct would be, bodily injury to another person.

Moreover, as to the further ambiguity arising from use of the word "expected" in immediate conjunction with "intended" to describe the actual *subjective* state of mind of the insured, one fair interpretation of the phrasing is that stated in *State Farm Fire & Casualty Company v. Muth*, 190 Neb. 248, 272, 207 N.W.2d 364, 366 (1973): "[i]t does not seem . . . designed . . . substantially [to] enlarge the exclusion." As the Nebraska court further explained:

"The term 'expected' when used in association with 'intended' carries the connotation of a high degree of certainty or probability . . .",

thus being "used . . . practically [to] equate with 'intended' . . . ."

■ Since the ambiguous language in question is reasonably and fairly susceptible of the foregoing alternatives of interpretation, we invoke the firmly established rule that we

"will construe conditions and exceptions of the insurance contract, inserted therein in an attempt to limit the coverage . . ., strictly against the insurer and liberally in favor of the insured",

*Insurance Company v. Montes*, 76 N.J. 477, 388 A.2d 603 (1978).

---

**3.** This point is more fully discussed in the concurring opinion of Pashman, J., in *Ambassador*

so that the coverage foundationally afforded will be "excluded" by virtue of the operation of a separate provision only where such separately stated "exclusion" unambiguously and unequivocally negates coverage. *See Wescott v. Allstate Insurance*, Me., 397 A.2d 156, 167 (1979); *Farm Bureau Mutual Insurance Company v. Waugh*, 159 Me. 115, 119–20, 188 A.2d 889 (1963).

■ Accordingly, we decide that the "exclusion" from the foundational personal liability coverage afforded Dodge by his policy, as the exclusion is stated in the language "bodily injury ... which is either expected or intended from the standpoint of the Insured", refers only to bodily injury that the insured in fact *subjectively wanted* ("intended") to be a result of his conduct or in fact *subjectively foresaw as practically certain* ("expected") to be a result of his conduct. Although some cases do not adopt this interpretation, the majority of courts that have decided the issue agree with our view. *Northwestern National Casualty Company v. Phalen*, 597 P.2d 720 (Mont. 1979); *Nielsen v. St. Paul Companies*, 283 Or. 277, 583 P.2d 545 (1978); *Hartford Fire Insurance Company v. Spreen*, Fla.App., 343 So.2d 649 (1977); *Lyons v. Hartford Insurance Group*, 125 N.J.Super. 239, 310 A.2d 485 (1973).

■ The remaining question, then, in our inquiry concerning the applicability of collateral estoppel, is whether the meaning we have given the "exclusion" language under consideration necessarily encompasses the circumstances embodied in Dodge's having, by his shooting of a shotgun, "recklessly" caused bodily injury to Victor Mahar—this being one rational alternative on which Dodge's conviction of the crime of "aggravated assault" upon Mahar could have rested.

"Recklessly", as a "culpable state of mind", is defined in 17–A M.R.S.A. § 10(3) in a manner including both subjective [10(3)(A)] and objective [10(3)(C)] components. Since we have decided that "bodily injury ... which is either expected or intended from the standpoint of the Insured" refers only to the insured's *actual subjec-*tive state of mind, and embodies no objective criterion in terms of what a reasonable and prudent person would or would not foresee, our analysis need not address the objective aspects of "recklessly."

Adverting to the "subjective" facets of the concept, and for our present purposes of considering bodily injury to Mahar as having been the *result* of an act by the insured Dodge, we find that 17–A M.R.S.A. § 10(3)(A) provides that "with respect to ... [such] result of his conduct", Dodge acted "recklessly" if his actual subjective state of mind was such that he was *conscious* of "*a risk* that his conduct will cause ... [it]." (emphasis added)

It is evident that one can be conscious of merely "a risk" that bodily injury to another will be caused by one's conduct without having either a conscious purpose, or a consciousness of practical certainty, that such a result will occur. Thus, here, the prior jury verdict that Dodge had committed "aggravated assault" against Mahar could have rested on a finding that Dodge was *only* aware of "a risk" that his conduct would cause bodily injury to Mahar, rather than a finding that Dodge had either a conscious purpose or a consciousness of practical certainty that his conduct would cause such a result. This being so, the jury's verdict did not *necessarily* include a determination that the bodily injury to Mahar caused by Dodge's conduct was "either expected or intended from the standpoint of [Dodge as] the Insured", as our decision herein interprets the correct meaning of that "exclusion" language of Dodge's homeowner's liability policy.

The presiding justice, therefore, erroneously applied collateral estoppel to reach the conclusion that under the homeowner's policy it issued to Dodge plaintiff insurance company owes no duty to Dodge to afford him a defense to the civil action brought against him by Victor Mahar.

The entry shall be:

Appeal sustained; judgment of the Superior Court vacated; case remanded to the

Superior Court for further proceedings not inconsistent with the opinion herein.[4]

All concurring.

4. On remand, disposition should be made of plaintiff's alternative contention that Dodge

failed to give timely notification of loss.