**HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, an Ohio corporation; and American States Insurance Company, Plaintiffs,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 84–2288.**

United States District Court, S.D. West Virginia, Charleston Division.

Sept. 25, 1985.

---

Charles E. Hurt, Charleston, W.Va., for plaintiffs.

Norman K. Fenstermaker, Huntington, W.Va., for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court upon the motion of the plaintiffs for summary judgment.

### I. INTRODUCTION

This civil action was brought by the plaintiffs, Health Care and Retirement Corporation of America (hereinafter Health Care) and American States Insurance Company (hereinafter American), in an effort to recover from the defendant, St. Paul Fire & Marine Insurance Company (hereinafter St. Paul), the sum paid for settlement of a claim brought against Health Care and to recover the expenses incurred in connection with the defense of and settlement of the claim. The plaintiffs allege that St. Paul is a liability insurance company which issued to Health Care an insurance policy of comprehensive general liability insurance coverage from March 31, 1981, to March 31, 1982.[1] Complaint ¶ II. The parties are in agreement that the policy provided that St. Paul would pay all sums which Health Care should become legally obligated to pay as damages because of bodily injury caused by an occurrence of the kind insured against. Complaint ¶ II, Answer ¶ 2. Additionally, plaintiffs allege that the policy required St. Paul to provide Health Care with legal representation and costs with respect to actions instituted against Health Care. Complaint ¶ II.

It is further alleged that on or about December 16, 1981, Helen R. Dolin instituted an action against the plaintiff Health Care in various courts, including the United

---

1. There are, in fact, two policies involved. The parties have stipulated to and filed the policies with the court. One policy provided coverage from March 31, 1980, to March 31, 1981, while the other policy was in effect from March 31, 1981, to March 31, 1982. The pertinent provisions of each of the policies are identical.

States District Court for the Southern District of West Virginia, alleging, in part, a breach of a construction contract for cleaning services which resulted in physical and mental pain and suffering for which Dolin sought damages in the amount of $200,000.00. Complaint ¶ III, Answer Exhibit A, *Dolin v. Wolfe Industries, et al.*, C.A. 81–2512. The plaintiffs assert that the St. Paul policy provided coverage for mental anguish, mental injury or illness. Complaint ¶ III. Health Care allegedly notified St. Paul of the actions filed by Dolin. Complaint ¶ IV. According to the allegations set forth in the complaint, St. Paul refused to afford insurance coverage in part because it claimed that the action filed by Dolin alleged intentional acts on behalf of Health Care. Complaint ¶ IV. Health Care allegedly then informed St. Paul that its actions were not intentional and requested that St. Paul conduct an investigation and afford coverage. Complaint ¶ IV. St. Paul allegedly refused to investigate the claim. Complaint ¶ IV. St. Paul has denied that Health Care advised the defendant that the actions were not intentional and demands strict proof of the allegation. Answer ¶ 4.

The plaintiffs allege that American had issued unto Health Care an umbrella policy of insurance which was secondary and excess to the St. Paul policy. Complaint ¶ V. As a result of St. Paul's refusal to afford coverage, it is alleged that American, with full reservation of rights, undertook to afford Health Care a defense. Complaint ¶ V.

The plaintiffs claim that after extensive trial preparations and thorough investigation, it was deemed in their best interests to settle the Dolin claim. Complaint ¶ VI. According to the plaintiffs, on January 27, 1984, the Dolin claim was settled for the sum of $22,000.00. Complaint ¶ VI. Expenses incurred in the defense and settlement of the claim are said to be $11,161.12. Complaint ¶ VI. Thus, the plaintiffs demand judgment of and from St. Paul in the amount of $33,161.12, plus interest and costs. Complaint ¶ VII.

## II. SUMMARY JUDGMENT

### A. Contract or Agreement

Health Care and American have moved the court pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment that St. Paul owes unto the plaintiffs the costs of defense and expenses and the reasonable settlement sum expended for settlement of the personal injury claim of Helen R. Dolin.

St. Paul has asserted that coverage was denied because of the definition of the term occurrence in the policy with Health Care. The policy provides as follows:

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured ....

In her suit against Health Care, Dolin in part alleges that she entered into a contract with Health Care which provided that she was to perform certain work and services for Health Care for which she was to be paid on both a lump sum and an hourly basis. Additionally, Dolin recited that there was an agreement made whereby Health Care would reimburse Dolin and pay her for additional work not contemplated in the contract. Dolin alleged in part that Health Care breached the contract and agreement.

■ The court observes that exclusion (a) of the Comprehensive General Liability Insurance policy specifically provided that "[t]his insurance does not apply: (a) to liability assumed by the Insured under any contract or agreement ...." Thus, it appears from the plain language of the policy that there is no coverage for amounts of money owed to Dolin as a consequence of contracts for services or for extra work done by agreement.

The affidavit of Paul G. Sieben, vice president of Health Care, states that Dolin contracted with Health Care to provide janitorial services in buildings being constructed by Health Care. Sieben states that a

dispute arose with Dolin regarding the amount due her under contracts. According to Sieben, Health Care was ordered by the United States Department of Housing and Urban Development (HUD) not to make further disbursements to Dolin under her contract because of Dolin's failure to pay wages to some of her employees and her failure to pay the scale of wages required by HUD. Sieben states that Dolin instituted various suits against Health Care in both state and federal courts and that several mechanics liens were filed by Dolin in various counties in West Virginia. After incurring expenses in trial preparation and the defense of the actions, Health Care settled all of the claims for the sum of $22,000.00. According to Sieben, Health Care "was willing to concede that the amount of $12,302.35 represented sums claimed that could have been claimed for extra cleaning services and the balance was for claimed personal injuries...." Plaintiffs' Motion for Summary Judgment, Affidavit of Paul G. Sieben.

St. Paul has submitted the affidavits of Marvin W. Masters and Helen Dolin. Masters, one of the attorneys for Dolin in the suits against Health Care, states that demand was made for personal injuries as well as contract damages. According to Masters, Health Care "consistently took the position that plaintiff was not entitled to any sum of money for personal injuries and settlement was arrived at through negotiations concerning the amounts under the contract as opposed to any consideration being given to mental or physical injury or suffering." Memorandum of St. Paul in Opposition to Motion for Summary Judgment, Exhibit A, Affidavit of Marvin W. Masters.

Dolin states that she claimed damages both as a result of personal injury and contract liability. In the final settlement, Dolin states that she did not receive all the money claimed for contract damages. According to Dolin, Health Care "took the position that I was not entitled to any sum of money for personal injuries, although, in the final settlement I signed a release for any and all damages, including personal injuries. I do not consider that the settlement included any amount of money for personal injuries." Id., Exhibit B, Affidavit of Helen Dolin.

St. Paul argues, based upon the affidavit of Sieben submitted by Health Care itself, that at most Health Care is entitled to only $22,000.00 less $12,302.25 and any of the defense costs attributable to defending the breach of contract. Moreover, St. Paul argues that in view of the affidavits of Masters and Dolin, it is questionable whether any of the settlement amount and the legal cost of defense are referrable to anything other than alleged amounts owed under contract or agreement.

Initially, the court observes that nowhere does Health Care argue that it is entitled to monies due under the contract. Instead, issue is taken with the affidavits of Dolin and Masters. Health Care submitted the affidavit of Charles E. Hurt, who was Health Care's attorney with regard to the suits brought by Dolin. Hurt states that all of the settlement negotiations were conducted with Dolin's counsel, Robert Taylor. According to Hurt, the position of Health Care throughout was that it was not indebted to Dolin for any sum, either for personal injuries or breach of contract. Hurt states that settlement negotiations were never based on any amount due under contract or for personal injuries, but when finally effected was based on a concession that Dolin may have been entitled to no more than $12,302.25 for extra cleaning services and that the balance represented Dolin's personal injury claim. Moreover, Hurt states that there was never any direct communication with Dolin. Hurt notes that with regard to Dolin's claims of mental depression, he was furnished a medical report of Dr. Gina M. Puzzuoli, a psychiatrist. The report is attached to the affidavit and concludes that as a result of the conflict with Health Care, Dolin suffered a major depression resulting in the need for psychotherapy and chemotherapy for at least a year. Hurt then states he had Dolin examined by Dr. William B. Rossman, who concluded that Dolin had a quite

noticeable depression that may be related to the business experience with Health Care. According to Hurt, when the settlement was finally concluded with Robert Taylor, it was based primarily upon her claim for personal injuries. Health Care Reply Memorandum, Affidavit of Charles E. Hurt.

It is noted that the Agreement of Release and Indemnification signed by Dolin specifically recited that "[t]he undersigned acknowledges that although the claims of the undersigned and the amount received by the undersigned in settlement thereof involves claims for monies due under contract and by virtue of contract, the majority of the undersigned's claim represents personal injuries." Motion for Summary Judgment.

Based upon all the foregoing, it is plain that at least a portion of the claims and the ultimate settlement represented monies due under contract or agreement which are specifically excluded by the policy. However, how the settlement amount was negotiated and what portion of the sum represented amounts attributable to contract or agreement as distinguished from personal injury remains a disputed question of fact.

### B. Slander, Defamation and Disparaging Material

■ St. Paul argues that other than breach of contract, the only other allegation setting forth a cause of action is contained in paragraph twenty of the Dolin complaint. In paragraph twenty, Dolin alleges that "in addition to the intentional failure to pay plaintiff for work performed by her and her employees, Corporation intentionally falsely informed her employees that she had been paid when Corporation knew that she hadn't."

Subparagraph (e) of the St. Paul policy provides that "[t]his insurance does not apply: ... (e) to personal injury arising out of a publication or utterance described in Group B [the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy], concerning any organiza-

tion or business enterprise, or its products or services, made by or at the direction of any Insured with knowledge of the falsity thereof." The language of the exclusion is plain and plaintiffs in their memorandum appear to concede that it is applicable.

That concession, however, does not conclude the matter for, as plaintiffs observe, the complaint may fairly be read as alleging other causes of action. For instance, upon reading the complaint one could conclude that there are personal injury claims premised upon outrageous conduct, interference with existing contractual relations or intentional infliction of mental distress. Thus, exclusion (e) does not operate as to excuse St. Paul from providing coverage or defense of the Dolin Claim.

### C. Occurrence

St. Paul further contends that coverage and defense have been properly denied because of the policy definition of occurrence which excludes bodily injury or property damage expected or intended from the standpoint of the insured. St. Paul contends that the allegations in the complaint regard intentional acts of Health Care. In determining the insuror's duty to provide coverage and to defend an action against an insured, the general rule is that the court must look to the allegations of the pleadings in the action against the insured. *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531 (8th Cir.1970). The pertinent allegations of the Dolin complaint are as follows:

20. Further, in addition to the intentional failure to pay plaintiff for work performed by her and her employees, Corporation intentionally falsely informed her employees that she had been paid when Corporation knew that she hadn't.

21. That as a sole and proximate result of the intentional and willful acts and omissions of Corporation, your plaintiff's life was threatened, she was placed in fear of her life, she was harassed and otherwise was deprived of the enjoyment of her life, all as a result of the intention-

al and outrageous acts and conduct of the defendant corporation.

22. That as a sole and proximate result of all of the aforesaid acts, conduct and omissions of Corporation in the manner and method aforesaid, your plaintiff was placed in fear that she would lose all of her property and assets and be rendered bankrupt and homeless.

23. That as the sole and proximate cause of the willful, intentional and culpable acts of Corporation, acting by and thorough its agents, servants and employees, plaintiff was caused to and did become severely sick, nervous, worried, anxious and frightened as a result thereof and she suffered physical and mental pain and suffering, physical and mental discomfort and has been prevented from enjoying her life and will suffer the same in the future and she has been damaged in the amount of $200,000.00.

24. That the acts and conduct of Corporation were intentional, willful and wanton and all done with a reckless disregard for the health and safety of your plaintiff and were done maliciously such that plaintiff is entitled to punitive damages from Corporation in the amount of $1,000,000.00.

St. Paul argues that Dolin's allegations are clear in claiming that the acts of Health Care were made "with a purpose to injure her such that the action is excluded from coverage by the policy language 'neither expected nor intended from the standpoint of the insured.'" St. Paul's Memorandum at 13.

Courts have recognized that the purpose of the intentional injury exclusion clause is to prevent extending to the insured a license to commit malicious acts. *See, e.g., Woida v. North Star Mutual Insurance Co.,* 306 N.W.2d 570 (Minn.1981). Contemporary liability insurance policies such as the one extended to Health Care by St. Paul generally provide coverage on an "occurrence" basis, which is most often defined to mean, in pertinent part, an accident which results in bodily injury or property damage neither expected or intended from the standpoint of the insured. *See* generally 11 Couch on Insurance 2d (Rev. ed.) § 44.285.

The insurance industry began using the exclusionary phrase "expected or intended from the standpoint of the insured" in policies affording a general coverage for liability as of approximately 1966 when a revision of standardized policy language was undertaken. *See Patrons-Oxford Mutual Insurance Co. v. Dodge,* 426 A.2d 888 (Me. 1981) Prior to 1966, the exclusion language was generally "bodily injury or property damage caused intentionally by or at the direction of the insured," and the court decisions indicated difficulty with the language in interpreting the concept of accident. *See Id.* Basically, as to the pre-1966 language, there were two views. One view held that the "caused intentionally" language was to be from the perspective of the insured, as it was the state of will of the insured by whose agency the injury was caused that determines whether an injury was accidental. *Id.* The second view characterized the former as a type of punishment to a wrongdoer which ignored the role of insurance as for the benefit of injured victims of accidents. *Id.* Thus, the second view considered the injury from the point of view of the victim. *Id.* Therefore, the language revision has been viewed as designed to make plain that the accident component of an occurrence is to be evaluated from the perspective of the insured rather than of the injured victim. *Id.* That the occurrence must be unexpected and unintended from the standpoint of the insured has prompted one commentator to state: "This should obviate the position taken by some courts that the accident should be considered from the viewpoint of the injured person." 1 R. Long, The Law of Liability Insurance § 1.22 (1985 & May 1985 Cum.Supp.).

The term "intentionally" requires that the person consciously desires the result of his act or knows with substantial certainty that the loss or damage will follow from his conduct regardless of his desire. *See, e.g., Indiana Lumbermens Mutual Insurance*

*Co. v. Brandum,* 419 N.E.2d 246 (Ind.App. 1981); *Iowa Kemper Insurance Co. v. Stone,* 269 N.W.2d 885 (Minn.1978); *Cincinnati Ins. Co. v. Mosley,* 41 Ohio App.2d 113, 322 N.E.2d 693 (1974). Several courts that have considered the question have determined that for purposes of the intentional injury exclusion clause, the term "expected" means a high degree of certainty or probability, or some variation thereof. *See, e.g., Clark v. Allstate Insurance Co.,* 22 Ariz.App. 601, 529 P.2d 1195 (1975); *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.,* 467 F.Supp. 17 (E.D.Pa.1979). A number of courts have determined that there is no difference between the terms expected and intended for purposes of construing an intentional injury exclusion clause. *See, e.g., Grange Mutual Casualty Co. v. Thomas,* 301 So.2d 158 (Fla.1974); *Patrons-Oxford Mutual Insurance Co. v. Dodge,* 426 A.2d 888 (Me. 1981); *State v. Glens Falls Insurance Co.,* 137 Vt. 313, 404 A.2d 101 (1979). However, in a great number of cases, the court did not explicitly consider whether the terms expected or intended were synonymous, but rather concentrated on determining whether the conduct of the insurer was within the scope of the intentional injury exclusion clause and thereby arguably and intentionally support the view that the terms are synonymous.

Although it is plain from a review of the complaint filed by Dolin that intentional acts are alleged, that does not necessarily mean that Health Care intentionally injured Dolin. Nor does the complaint allege a specific intent to injure. The court finds persuasive the conclusion of courts construing exclusionary clauses such as the one at issue whereby a distinction is drawn between an allegation of a specific intent to injure on the one hand and injury which was the unintended result of an act. *See, e.g., Quincy Mutual Fire Insurance Co. v. Abernathy,* 469 N.E.2d 797 (Mass.1984); *Travelers Insurance Co. v. Cole,* 631 S.W.2d 661 (Mo.1982); *Grinnell Mutual Reinsurance Co. v. Frierdich,* 79 Ill. App.3d. 1146, 35 Ill.Dec. 418, 399 N.E.2d 252 (1979); *Vappi & Co. v. Aetna Casual-*

*ty & Surety Co.,* 348 Mass. 427, 204 N.E.2d 273 (1965); 11 Couch on Insurance 2d (Rev. ed), § 44.285; 1 R. Long, The Law of Liability Insurance, § 1.16 generally (1985 & May 1985 Cum.Supp.). In fact, the majority rule with respect to intentional injury exclusions is that the exclusion applies if the insured intended to do a particular act, and intended to do some harm, even if the harm actually done was radically different from the harm intended. Yet, on the other hand, an intentional injury exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence. *See, e.g., Allstate Insurance Co. v. Steinemer,* 723 F.2d 873 (11th Cir.1984); *Hartford Fire Insurance Co. v. Spreen,* 343 So.2d 649 (Fla. 3d Dist.Ct.App.1977); *Phoenix Insurance Co. v. Helton,* 298 So.2d 177 (Fla. 1st Dist.Ct.App.1974). *See also* Annot. "Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured", 31 A.L.R.4th 957 (1984). Without such a distinction, the policy language referring to "the standpoint of the insured" is rendered meaningless.

St. Paul also points to the general rule which provides:

> Generally, the obligation of a liability insurer to defend an action brought against the insured by a third party is determined by the allegations of the complaint in such action. This rule has been applied in the cases where a liability insurer has denied the obligation to defend its insured on the basis of an "intentional injury or damage" exclusion in the policy. From these cases it appears, generally, that if the allegations in the action against the insured are unequivocal with regard to claiming injury or damage from the wilful, intentional acts of the insured, and if the character of the acts alleged is such that it would, if proved, establish the insured's intent to cause the injury or damage, the insurer is under no duty to defend.

Annot., 2 A.L.R.3d 1238, "Liability Insurance: Specific Exclusion of Liability for Injury Intentionally Caused by Insured" (1965 & Supp.1984) (footnote omitted).

■ It is not plain from the fact of Dolin's complaint that the character of the acts alleged would, if proved, establish Health Care's intent to injure Dolin. Moreover, the rule that the insurer should look exclusively to the allegations of the complaint has come under growing criticism and attack such that a minority rule has evolved which acknowledges the reasonable expectations of the insured and imposes a duty to investigate. *See, e.g., Columbia Union National Bank v. Hartford Accident and Indemnity Co.*, 669 F.2d 1210 (8th Cir.1982); *Tennessee Corporation v. Hartford Accident and Indemnity Co.*, 463 F.2d 548 (5th Cir.1972); *Pittsburgh Plate Glass Co. v. Fidelity & Casualty Co.*, 281 F.2d 538 (3d Cir.1960); *McGettrick v. Fidelity & Casualty Co.*, 264 F.2d 883 (2d Cir.1959); *Hardware Mutual Casualty Co. v. Hilderbrandt*, 119 F.2d 291 (10th Cir.1941); *Healy Tibbitts Construction Co. v. Foremost Insurance Co.*, 482 F.Supp. 830 (N.D.Cal.1979); *Bituminous Casualty Corp. v. Travelers Insurance Co.*, 122 F.Supp. 197 (D.Minn.1954); *Allstate Insurance Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981); *Spruill Motors, Inc. v. Universal Underwriters Insurance Co.*, 212 Kan. 681, 512 P.2d 403 (1973); *City of Palmyra v. Western Casualty & Surety Co.*, 477 S.W.2d 428 (Mo. 1972); *Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 509 P.2d 222 (1973); *United States Fidelity & Guaranty Co. v. Baugh*, 257 N.E.2d 699 (Ind.App.1970); *National Indemnity Co. v. Flesher*, 469 P.2d 360 (Alaska 1970); *Gray v. Zurich Insurance Co.*, 54 Cal.Rptr. 104, 65 Cal.2d 263, 419 P.2d 168 (1966).

Criticism of the general rule acknowledges that the notice pleading system does not operate with such precision as to predict accurately insurance coverage. *See, e.g, Texaco, Inc. v. Hartford Accident & Indemnity Co.*, 453 F.Supp. 1109, 1113 (E.D.Okla.1978); *Kepner*, 109 Ariz. at 331, 509 P.2d at 224. It is conceded that at least until notice pleading a reasonable amount of certainty existed since pleading requirements were strict and variances of proof were not generally tolerated. The complaint under notice pleading is designed only to put an opposing party on notice. Rule 8, Federal Rules of Civil Procedure. As such, the complaint offers "unreliable assurance that the third party's complaint will accurately reflect its claim or predict the basis of any relief. Amendments to the pleadings to conform with the evidence can be made with ease, absent prejudice to an opposing party. Thus, the fact of a complaint may be a poor measure of what is to follow. Indeed, notice pleadings can become so ambiguous and non-committal that the defendants do not and cannot reasonably know what is being alleged." 1 R. Long, The Law of Liability Insurance, § 5.08 (1985 & May 1985 Cum.Supp.). *See also* 7C Appleman, Insurance Law and Practice (Berdal ed.) § 4685.01 (1979 & 1981 Pocket Part) (noting that the better view requires that the insurer make an investigation of the circumstances of the claim).

Accordingly, courts have come to question the appropriateness of relying solely upon the pleadings of the third party's complaint to determine the rights created and obligations imposed by an insurance contract. In place of the general rule, courts have instead imposed a duty of reasonable investigation on the insurer in ascertaining its duty to defend. *See, e.g.,* cases and authority cited at pages 161–162.

St. Paul does not argue the merits of the general rule or criticize the duty of reasonable investigation approach. Rather, St. Paul simply points out that the reasonable investigation approach is the minority rule.

Neither party directs the court to any West Virginia ruling that gives any indication as to how the West Virginia Supreme Court of Appeals would rule if faced with the issue. In the absence of a state court ruling, the duty of the federal court is to decide the issue, recognizing that the issue

must be decided as the court believes the state's highest court is likely to decide from all that is known about its methods of reaching decisions and by considering all the data, developing lines of authority, dicta and legislative developments that the state court would consider. *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832 (2d Cir.1967); *Daily v. Parker*, 152 F.2d 174 (7th Cir.1945); 19 Wright & Miller, Federal Practice and Procedure: Jurisdiction § 4507 (1982 & Pocket Part 1983).

The court observes that West Virginia has consistently applied the rule that an insurance policy which requires construction must be construed liberally in favor of the insured and strictly against the insurer. *Hensley v. Erie Insurance Co.*, 283 S.E.2d 227 (W.Va.1981); *Broy v. Inland Mutual Insurance Co.*, 160 W.Va. 138, 233 S.E.2d 131 (W.Va.1977); *Polan v. Travelers Insurance Co.*, 156 W.Va. 250, 192 S.E.2d 481 (1972); *Thompson v. State Automobile Insurance Co.*, 122 W.Va. 551, 11 S.E.2d 849 (1940). It has also been stated by the West Virginia Supreme Court of Appeals that the "rule is but a tacit acknowledgement that the insurance policy is prepared by the company and therefore, the average policyholder has no opportunity to influence the policy language." *Hensley*, 283 S.E.2d at 229.

In addressing issues arising out of disputes involving insurance policies, the West Virginia court has recently indicated a predisposition toward what it denoted as modern trends and developments. *Hensley*, 283 S.E.2d at 229. In *Hensley*, the court adopted the modern trend which permits recovery for punitive damages arising from gross, reckless or wanton negligence absent some specific exclusion of coverage for punitive damages in the policy. *Hensley*, 283 S.E.2d at 230, 233.

It is observed that the West Virginia Legislature has addressed the question of unfair insurance claim settlement practices.

W.Va.Code § 33–11–4(9) (1982 Replacement Vol. & Cum.Supp.1985). The text of W.Va. Code section 33–11–4(9) states in pertinent part that "[n]o person shall commit or perform with such frequency as to indicate a general business practice ... (c) [f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (d) [r]efusing to pay claims without conducting a reasonable investigation based upon all available information."

Inasmuch as the West Virginia Supreme Court has adopted the modern approach in another area of dispute regarding insurance coverage and the Legislature has indicated an interest in regulating insurance practices by enacting a statutory scheme which characterizes as unfair the failure to adopt and implement reasonable standards for conducting prompt investigation of claims, it appears that the West Virginia Supreme Court would adopt the minority rule requiring reasonable investigation.

Based upon all the foregoing, St. Paul had a duty to investigate the facts once Health Care informed it that it neither expected nor intended personal injury to Dolin. The plaintiffs allege that Health Care "advised the defendants that the actions were not intentional and requested that the defendant investigate the claim and the facts surrounding the same and afford the plaintiff Health Care, coverage, which the defendant failed and refused to do." Complaint ¶ IV. St. Paul has denied the allegation and demands specific proof. The memoranda of the parties did not address the facts regarding what information Health Care provided St. Paul. Thus, there remains a genuine issue as to material facts such that summary judgment is not appropriate. Rule 56, Federal Rules of Civil Procedure.

## III. CONCLUSION

Accordingly, based upon all the foregoing, it is ORDERED that the motion of the plaintiffs for summary judgment be, and it hereby is, denied.

The Clerk is directed to forward certified copies of this order to all counsel of record.