WESTERN WORLD INSURANCE
COMPANY, INC., Plaintiff,

v.

CIGNA CORPORATION, et
al., Defendants.

No. 87–12008–CIV.

United States District Court,
S.D. Florida.

Aug. 28, 1989.

William L. Petros, Miami, Fla., for plaintiff.

William S. Reese, Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Miami, Fla., for Aetna and Cigna.

David L. Weinstein, Fischel & Kahn, Ltd., Chicago, Ill., for Collier County.

## FINAL SUMMARY JUDGMENT

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon Defendant Collier County's Motion to Dismiss; Plaintiff's Motion for Summary Judgment; and Defendants Aetna and Cigna's Motion for Summary Judgment.

THE COURT has considered the motions and the pertinent portions of the record. A hearing was held March 6, 1989 at which counsel for all parties were present and heard. At the hearing, the parties were ordered to file a joint statement of undisputed fact consistent with S.D.Fla.Gen.R. 10.J., and to supplement and update their motions. The parties have filed supplemental memoranda which have also been considered by the Court.

Nature of the Action

Plaintiff, Western World Insurance Company, Inc. (hereinafter referred to as "Western World"), is seeking declaratory relief from the Court to determine the rights and liabilities of Plaintiff and Defendants Aetna Fire Underwriters Insurance Company and Cigna Corporation,[1] regard-

---

1. The interests of Aetna and Cigna are identical    in this case (*see* stipulated fact number 13, *in-*

ing insurance coverage provided to Collier County with respect to two suits: *Cannan et al. v. Avitar Properties, Inc., etc. and Collier County,* Case No. 85–2036–CA–01–WCM; and *Nickel et al. v. State of Florida Department of Transportation, County of Collier, et al.,* Case No. 86–1445–CA–01–CTC; both in the 20th Judicial Circuit Court for Collier County, Florida. In the sole claim now before this Court, Western World seeks a determination that the coverage its policy provided to Collier County was excess over the coverage provided to the County by Aetna/Cigna. Western World seeks reimbursement from Aetna/Cigna for the cost of defending Collier County in the *Cannan* and *Nickel* actions.[2] Aetna/Cigna has denied any coverage to Collier County. Western World concedes that the allegations in both the *Cannan* and *Nickel* complaints would require it to provide a defense in the absence of other primary insurance.

Stipulated Facts

The following facts were stipulated to and submitted by the parties:

1. By letter dated September 24, 1985, Collier County notified Aetna of the initial complaint in *Cannan,* and of the possibility that a claim might later be made against the County.

2. By letter dated October 9, 1985, Aetna denied coverage and refused to defend the County in connection with the initial complaint in the *Cannan* suit.

3. Aetna denied coverage and refused to defend Collier County in the amended *Cannan* complaint based on its view that the amended complaint did not allege bodily injury, personal injury, property damage or an occurrence.

4. On April 23, 1988, a second amended complaint was filed in the *Cannan* action.

5. By letter dated July 11, 1989, Collier County notified Aetna and tendered its defense in connection with the initial

first amended complaint in the *Nickel* suit.

6. By letter dated July 30, 1986, Aetna acknowledged the County's notice of the *Nickel* suit and advised that it would investigate under an unspecified reservation of rights.

7. By letter dated August 25, 1986, Aetna denied coverage and refused to defend Collier County in the *Nickel* suit.

8. By letter dated September 24, 1986, Collier County notified Aetna of the second amended complaint in *Nickel.*

9. By letter dated October 6, 1986, Aetna denied coverage and refused to defend the County in the second amended complaint in *Nickel.*

10. On February 5, 1987, the *Nickel* plaintiffs voluntarily dismissed their suit against Collier County, without prejudice.

11. On August 17, 1988, six of the *Cannan* plaintiffs voluntarily dismissed their claims against Collier County pursuant to a settlement agreement. On August 18, 1988, a Final Judgment was entered against the remaining *Cannan* plaintiff. No appeal followed.

12. The allegations in *Cannan* and *Nickel* required Western World to provide a defense to Collier County in those actions.

13. The terms (other than policy limits) of the Aetna policy (No. CPP 44 24 48) and the Cigna policies (GPP DO 96 86 18 6 and GPP DO 76 80 02 8) are the same.

Collier County's Motion to Dismiss

■ Collier moves to be dismissed from the lawsuit on the ground that the Court no longer has subject matter jurisdiction. Western World initially included the County as a defendant because it was currently defending the County in the subject lawsuits. Those suits have since been concluded, and the only outstanding claim Western World has is against Aetna/Cigna. Be-

---

*fra* ). Therefore, these defendants will be hereinafter referred to in the singular as "Aetna/Cigna."

**2.** Western World defended Collier County in the subject lawsuits under a reservation of rights agreement.

cause there is no controversy, the Court has no jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. *Emory v. Peeler*, 756 F.2d 1547, 1551–1552 (11th Cir.1985).

### The Summary Judgment Motions

Aetna/Cigna's policy provides general liability coverage, and primary insurance therefor. Western World's policy is an officers and directors' insurance policy. If another carrier provides primary coverage, Western World's policy provides excess coverage only. Western World argues that Aetna/Cigna's policy provided coverage for the subject suits, and therefore Aetna/Cigna had a duty to defend the County. Aetna/Cigna argues that the events as alleged in the complaints did not fall under its policy coverage. The issue, then, is whether Aetna/Cigna had a duty to defend Collier County in the subject suits.

### Law Applicable to Both Cases

■ Whether Aetna/Cigna should have defended these suits is determined by the "duty to defend" doctrine. A duty to defend is broader than a duty to indemnify; thus, Aetna/Cigna may have a duty to defend even though the subject incident did not actually fall under the terms of its policy. The Eleventh Circuit in *Trizec Properties, Inc. v. Biltmore Construction* summarized Florida law on the rule:

> The duty to defend depends solely on the allegations in the complaint filed against the insured. The complaint must allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured. If the complaint alleges facts partially within and partially outside the scope of coverage the insurer is obligated to defend the entire suit. The duty to defend is separate and apart from the duty to indemnify and the insurer may be required to defend a suit even if the later true facts show there is no coverage. All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured, and

if the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered.

767 F.2d 810, 811–812 (11th Cir.1985).

Aetna/Cigna's policies with the County contained this language relevant to their duty to defend/indemnify (italics in original):

> If you or another *insured* has a legal responsibility to pay a claim someone made based on *bodily injury, personal injury* or *property damage* resulting from an occurrence, we will pay that claim if it is covered under this policy.

(Aetna Policy, at 22). Occurrence is defined (in the definitions section of the policy) as follows:

> ... an *accident*, including continuous or repeated exposure to the same event, that results, during the policy period, in loss or damage to your property, or *bodily injury, personal injury,* or *property damage.* Such injury or damage must be neither expected nor intended by the *insured.*

(Aetna policy at 35.) "Accident" as defined in the definitions section

> means a sudden, unforeseen, unintended, event. (Aetna policy at 33.)

Western World argues that the underlying complaints must allege that Collier County specifically intended to injure, or intended to harm, before the limitation applied. It argues that intending to *act,* with the act resulting in harm, is not enough. It relies on *Allstate Insurance Company v. Steinemer,* 723 F.2d 873, 875 (11th Cir. 1984):

> [T]he exclusion rule applies if the insured intended to do a particular act, and intended to do some harm, even if the harm actually done was radically different from that intended.... On the other hand, an "intentional injury" exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence.[3]

---

**3.** Aetna/Cigna argues for a slightly different    standard. They point to the language of their

The *Cannan* lawsuit

The *Cannan* case was a class action brought by property owners whose land was adjacent to a canal. When the canals were built, "spoil banks" were created along the canal edge. The plaintiffs alleged that Collier County, in conjunction with several businesses, conspired to wrongfully and through deceptive and fraudulent means remove the spoil banks from the plaintiffs' property. The issue thus presented here is whether the *Cannan* complaint alleges that the County intended to remove the spoil banks from the plaintiffs' property, knowing that the banks were on the plaintiffs' property.

Western World argues that paragraph 17 of the complaint is the relevant section, and that it does not evidence an intent to harm:

17. The acts complained of herein were done willfully, wantonly and maliciously and were either criminal in nature or bordered upon being criminal and/or were calculated and/or intentional all of which resulted in harm to the plaintiff.

Western World places much reliance on the words "which resulted in harm." It argues that this language indicates that the complaint alleges that an *act* was intended, not the harm which only resulted.

The words "resulted in harm" certainly cannot be argued to import that "intent to harm" could *not* have been alleged. However, Western World contends that nowhere in the complaint are allegations that the harm was intended.

policy defining "occurrence" and "accident" (quoted above) and argue that if Collier intended the act or expected the injury, the exclusion applies and Aetna/Cigna had no duty to defend. Aetna/Cigna also contends that *Allstate* is not on point because the language of the subject policy was different.

The subject language in the *Allstate* case stated: "We do not cover bodily injury or property damage intentionally caused by an insured person." That language is indeed narrower—Aetna/Cigna's policy prohibits injury intended or *expected*. The inclusion of the word "expected" might suggest that an element of foreseeability be read into the exclusionary provision, but courts have construed the term narrowly or to be equivalent to "intended." *See discussion in Health Care & Retirement v. St. Paul Fire &*

Aetna/Cigna argues that such an intent is found in the "willfully, wantonly and maliciously" language in the complaint. Western World responds with *Health Care & Retirement v. St. Paul Fire & Marine*, 621 F.Supp. 155 (D.C.W.Va.1985). In *Health Care*, Plaintiff alleged that the Defendant insured had, through "willful, intentional and culpable acts," breached a contract with the purpose of causing Plaintiff injuries. *Id.* at 160. Defendant's insurer refused to defend on the grounds that the complaint alleged intentional injury (its policy excluded acts which were expected or intended from the point of the insured).

The Court ruled that the insurer did have a duty to defend. It reasoned that intent to act was not the same as intent to injure, and that it was not plain that the facts as alleged, if proved, would establish the defendant insured's intent to injure. Moreover, the court determined that if faced with the question, the West Virginia Supreme Court would adopt the minority rule that an insurer has a duty to "reasonably investigate" a claim to determine if it has a duty to defend. *Id.* at 163. The insurer in *Health Care* had been informed by the insured that the insured did not intend to injure the plaintiff. *Id.*

■ The *Cannan* case is distinguishable. First, the allegations of the *Cannan* complaint, when taken as a whole, leave no doubt that Collier intended to harm the plaintiffs (by removing the spoil banks).[4]

*Marine,* 621 F.Supp. 155, 160–61 (D.C.W.Va. 1985).

Because the allegations of the complaint clearly indicate that Collier had intended to cause harm, it is immaterial which test is used.

4. In addition to paragraph 17, several other portions of the *Cannan* complaint are relevant to intent, including but not limited to the following:

11. [Businesses], ... after obtaining permits from [Collier] enter[ed] upon the real property of the Plaintiffs without permission or consent and remove[d] from Plaintiffs' property limits a portion or all of the spoil banks located thereon..... All of this was well known to [Collier], which inspected the sites....

At best, it could be argued that under the allegations of the complaint, Collier believed it had the legal right to remove the plaintiffs' spoil banks; but there is no question that the County intended the harm upon which the plaintiffs' complaint was based. If belief in legality excuses an insured from the intentional harm exclusion, Western World has provided no authority for it, nor has the Court found any.

Also, the minority rule adopted by the *Health Care* court is not applicable in Florida. *See National Union Fire Insurance Company v. Lenox Liquors, Inc.,* 358 So.2d 533, 535–36 (Fla.1978) (holding that allegations of complaint govern, and that there is no duty to defend where complaint alleged only willful action); *Trizec Properties,* 767 F.2d at 811–812 (holding that in Florida, the duty to defend depends solely on the allegations in the complaint filed against the insured, and that the complaint must allege facts which fairly bring the case within coverage). Because there is no doubt that the *Cannan* Complaint alleged that Collier County intended to cause injury to the plaintiffs, Aetna/Cigna had no duty to defend.

### The *Nickel* Lawsuit

■ This is another class action suit brought by owners of land adjacent to State Road 84 (a/k/a "Alligator Alley"). The complaint alleged that the State Department of Transportation seized land bordering SR 84 with the alleged purpose of building fences and digging canals, thus preventing the plaintiffs from having access to SR 84. The plaintiffs claimed that an earlier contract between Collier and the State gave right of ways to the county, and sued for an injunction to force the County to enforce its rights under contract.

Aetna makes two arguments in support of its claim that this case also falls outside the scope of its policy. First, as in the *Canaan* claim, it contends the County intended to do the alleged harm, and therefore the incident does not fall under the definition of "occurrence." Second, it argues that its policy does not cover claims when they are based on a contract to which the *injured* is not a party. The Aetna policy states on page 25:

> In addition, we won't protect you against claims or suits brought against you under a *contract* by someone who isn't a party to that *contract*.

Although the *Nickel* complaint does not contain the words of culpability present in the *Cannan* complaint, there is no question that the harm, blocking access by building fences and canals, was intended. Furthermore, the complaint specifies that the contract at issue was between the Collier County and Florida, and so clearly falls within the language of the exclusion. Aetna/Cigna therefore had no duty to defend the *Nickel* lawsuit under either the "occur-

21. Defendants ... had entered into and continued a conspiracy with each other to deprive the owners of certain portions of their real property known as "spoil banks" ...

22. g.) When complaints were made by Plaintiffs to the County that an illegal bridge had been placed across the canal without permits therefore in order to assist in the removal of certain Plaintiffs' realty, the Defendant County refused to take action.

i.) Defendants carried out inspections of properties on which they had sold spoil banks and issued permits for the removal of same. These inspections revealed to them that top soil, ... was being dug from various Plaintiffs' properties and that other damages were being done to said properties. This knowledge was mostly ignored and in some cases, was actively covered up so as not to interfere with future sales and profits.

28. At the time of such taking, Plaintiffs were either absent or they did not consent or if they did consent, such consent was induced and obtained by fraud or by other unlawful or wrongful means.

37. The Defendants themselves and by and through their agents, servants and/or employees made fraudulent representations to the Plaintiffs to mislead them by stating and/or producing documents indicating that Defendants owned all the spoil bank dirt ...

38. The false, misleading and fraudulent statements and representations of the Defendants were made for the purpose of inducing the Plaintiffs not to interfere with the removal of their property ... and said statements were knowingly made and were made willfully and maliciously.

39. The Defendants knew at the time that the representations were made that they did not own the property or should have known they did not own it or should have awaited the outcome of the declaratory action filed by the Cottongimes or filed one of their own.

rence" limitation or the "non-party" exclusion.

Summary Judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact, and that he is entitled to a judgment as a matter of law. *Carlin Communication, Inc. v. Southern Bell Telephone and Telegraph Co.*, 802 F.2d 1352, 1356 (11th Cir.1986). In this case, there are no issues of fact, and as a matter of law, Aetna/Cigna had no duty to defend either underlying lawsuit. Therefore, Summary Judgment is appropriate, and it is accordingly,

ORDERED AND ADJUDGED as follows:

1. Collier County's Motion to Dismiss be, and the same is, hereby GRANTED, and Defendant Collier County is hereby DISMISSED from this cause with prejudice.

2. Western World's Motion for Summary Judgment be, and the same is, hereby DENIED. Defendants Aetna Fire Underwriters Insurance Company and Cigna Corporation's Motion for Summary Judgment be, and the same is, hereby GRANTED. Final Summary Judgment is hereby entered in favor of Defendants and against Western World, together with costs to be taxed by the Clerk of this Court upon the filing of an appropriate bill of cost form.

DONE AND ORDERED.