2000 ME 155

**ROYAL INSURANCE COMPANY**

v.

**Geraldine PINETTE, et al.**

Supreme Judicial Court of Maine.

Argued May 1, 2000.
Decided Aug. 10, 2000.

James D. Poliquin, Esq. (orally), Norman, Hanson & DeTroy, Portland, for the plaintiff.

Graydon G. Stevens, Esq. (orally), Kelly, Remmel & Zimmerman, William Vickerson, Esq., Levenson, Vickerson & Beneman, Paul M. Boots, Esq., Portland, for the defendants.

Panel WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

WATHEN, C.J.

¶ 1 Geraldine Pinette, Robert Matthews, and Patricia Wilson, the personal representatives for the estates of Kevin Pinette, Dana Matthews and Nicholas Patenaude, respectively, appeal from a summary judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) finding that Royal Insurance Company had no duty to indemnify its insured, Sabato Raia, for any liability for shooting and killing Pinette, Matthews and Patenaude in June of 1997. The Estates argue that though Raia acted intentionally, and though the homeowner's insurance policy issued to Raia by Royal did not cover bodily injury unless it was both accidental and neither expected nor intended by the insured, the court should have found a duty to indemnify because Raia acted under a mistaken claim of right, namely the unreasonable belief that he was entitled to act in self-defense. The Estates assert that this negligent claim of right means that the consequences of Raia's intentional acts were unexpected and therefore covered by the policy. We disagree and affirm the judgment.

¶ 2 This case comes before us in a highly unusual posture. Royal filed the present action in Superior Court seeking a declaratory judgment that it had no duty to indemnify Raia for his actions. The parties stipulated as to the relevant facts in this case. These stipulations provide in pertinent part:

1. On June 24, 1997, Sabato Raia intended or expected to a practical certainty

that death or serious bodily injury would result when he shot Kevin Pinette, Dana Matthews and Nicholas Patenaude.

2. Sabato Raia committed the civil tort of battery upon Kevin Pinette, Dana Matthews and Nicholas Patenaude.

3. At the time of the shootings, Sabato Raia subjectively believed that his life was in danger and that his actions were a legitimate use of force in defense of his life. However, a defense of self-defense to a civil battery claim would not be valid because Sabato Raia's belief that he was entitled to act in self-defense was not reasonable.

4. Royal Insurance Company had issued to Sabato Raia a homeowner's policy that was in effect at all relevant times
. . . .

Shortly after the Estates answered the complaint, Royal moved for a summary judgment, basing its motion upon these stipulated facts. Royal argued that it had no duty to indemnify Raia because the bodily injury did not arise out of an "occurrence"[1] as required by the policy and because, even if the shooting was an "occurrence," it was excluded under the policy language preventing recovery for injury the insured "expected or intended."[2] The Superior Court granted a summary judgment, ruling that Raia's conduct fell "squarely within the exclusion" for expected or intended bodily injury. The Estates appeal from this judgment.

¶ 3 Although Royal is seeking a declaratory judgment as to its duty to indemnify Raia, the Estates have never instituted a civil suit against Raia to establish his liability for the shootings. In the ordinary case, "[a]n insurer may not litigate its duty to indemnify until the liability of the insured has been determined." *Hanover Ins. Co. v. Crocker,* 1997 ME 19, ¶ 1 n. 1, 688 A.2d 928, 929 n. 1. Nonetheless, we have noted a few limited exceptions to this requirement. *See Patrons Oxford Mut. Ins. Co. v. Garcia,* 1998 ME 38, ¶ 7, 707 A.2d 384, 386. Because Raia was not a party to this action or to the stipulations, however, those stipulations, without more, are insufficient to place this case within one of those exceptions. *See Northern Security Ins. Co., Inc. v. Dolley,* 669 A.2d 1320, 1321, 1323 (Me.1996) (holding that where *all necessary parties*—including the insurer, the insured, and the third party claimant—had stipulated to the material facts in the dispute, a declaratory judgment action on the insurer's duty to indemnify could proceed). At oral argument the parties stipulated to the existence of an agreement[3] in which the Estates released all claims they might have otherwise asserted directly against Raia in exchange for a declaratory judgment based on the stipulations. The effect of the agreement and stipulations is to place this case in a procedural posture that is the functional equivalent of having had a full trial with no dispute as to Royal's duty to defend Raia and a determination of facts consistent with the stipulations. Accordingly, judicial intervention does have "a direct, immediate and continuing impact" upon the parties, *see Maine Pub. Serv. Co. v. Public Util. Comm'n,* 524 A.2d

---

1. Under the policy, claims "against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' " are covered up to the limits of liability. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in ... 'bodily injury' ...."

2. The policy excluded from coverage " 'bodily injury' or 'property damage' ... [w]hich is expected or intended by the 'insured' ...."

3. Absent the agreement, Raia would be a necessary party who must be joined if feasible. *See* M.R. Civ. P. 19(a). Although the agreement between the parties preventing further action against Raia makes his joinder unnecessary, the better practice would have been to make that agreement part of Royal's complaint pursuant to Rule 19(c). *See* M. R. Civ. P. 19(c) ("A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1)–(2) hereof who are not joined, and the reasons why they are not joined.").

1222, 1226 (Me.1987), and this action is ripe for review.

¶ 4 We review the entry of a summary judgment "for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered," *Peterson v. State Tax Assessor*, 1999 ME 23, ¶ 6, 724 A.2d 610, 612, and will affirm "if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law." *Id.* The Estates argue on appeal that the policy language excluding intentional or expected conduct is ambiguous and that the proper resolution of this ambiguity leads to the conclusion that a battery undertaken in self-defense is neither intended nor expected under the policy. "The language of a contract of insurance is ambiguous if it is reasonably susceptible of different interpretations." *Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me.1996). If there is an ambiguity, "a liability insurance policy must be construed so as to resolve all ambiguities in favor of coverage." *Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 609 (Me. 1990). Whether a policy is ambiguous is a question of law. *See Apgar*, 683 A.2d at 498. We review questions of law de novo. *See H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 923 (Me.1996).

¶ 5 Though we have once before held a similar exclusion ambiguous, *see Patrons–Oxford Mut. Ins. Co. v. Dodge*, 426 A.2d 888, 891 (Me.1981), the resolution of that case does not control the present one. In *Dodge*, we held that the exclusion applied only if the insured subjectively expected the injury to occur, thus resolving an ambiguity over whether the exclusion required "objective normative criteria." *See id.* at 891–92. Because the Estates and Royal have stipulated that Raia had the necessary subjective intent to cause injury, *Dodge* does not control.

¶ 6 The Estates instead claim that further ambiguity lies within the policy's failure to distinguish between the intent to perform a physical act causing injury and the intent to cause that injury. We agree that there is an ambiguity within this exclusion, but conclude that this ambiguity has already been resolved under our prior case law. In three cases, we have considered the motives behind an intentional physical act when evaluating whether an intentional/expected exclusion applied. Two of these cases involved intentional entry onto the real property of another. *See Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350 (Me.1996); *Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608 (Me.1990). In *Ferraiolo*, the defendant was alleged to have operated a gravel pit in such a way as to trespass on the property of another, while in *Gibson*, the plaintiffs were alleged to have intentionally entered upon their neighbor's land. *See Gibson*, 673 A.2d at 1352; *Ferraiolo*, 584 A.2d at 609. We agreed in both cases that the entry upon the land was intentional, though in each case there was the possibility the trespasser never intended to infringe upon the rights of the landowners. *See Gibson*, 673 A.2d at 1353; *Ferraiolo*, 584 A.2d at 610. Nonetheless, all that is required for liability in trespass is the intent to be on the land, even if the trespasser had no knowledge that he was on the land of another and had no intention of harming the owner of that land. Liability for trespass exists despite the defendant's mistake, inadvertence or negligence. *See Gibson*, 673 A.2d at 1353; *Ferraiolo*, 584 A.2d at 611 n. 3. We therefore refused to apply the exclusion, reasoning that though the entry was intentional, the consequences of that act—in other words, the injury to the landowner—could nonetheless be unintentional and covered under the liability policy. *See Gibson*, 673 A.2d at 1353; *Ferraiolo*, 584 A.2d at 610-11. It was not enough for the insured to intend to perform an act that caused injury if the insured did not also intend to cause the injury itself.

¶ 7 In *Vigna v. Allstate Ins. Co.*, 686 A.2d 598 (Me.1996), we applied a similar analysis in determining whether a claim against the insureds for the infliction of emotional pain and suffering was excluded from coverage. *See id.* at 599. The insureds were alleged to have intentionally withheld payment to a contractor for renovations to their house, thus causing the contractor to suffer emotional distress. *See id.* at 600. Though the insureds had withheld payment intentionally, there was no indication that the insureds had withheld payment intending to cause emotional distress. *See id.* The exclusion was inapplicable because the intentional act had not been motivated by the intent to cause the injury. *See id.*

¶ 8 Our cases thus demonstrate that the exclusion applies only when the insured has acted with the intention or expectation that another will be harmed by the insured's intentional act. The Estates argue that the claim of self-defense is essentially a claim of a lack of intention to do harm and therefore the exclusion does not apply to the present situation. We disagree. Self-defense, in the law of torts, is a privilege "conditioned upon a proper motive and reasonable behavior ...." WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 16 at 99 (4th ed. 1971). A privilege "signifies that the defendant has acted to further an interest of such social importance that it is entitled to protection, even at the expense of damage to the plaintiff." *Id.* § 16 at 98. The fact that self-defense motivates the battery does not change the reality of the event: The batterer actively intends to harm another in a way that a trespasser who enters land under a mistaken claim of right does not. The claim of self-defense is a plea to justify what the batterer knows would otherwise be an improper action, rather than an indication that the batterer was unaware that he or she was harming the victim. Despite the fact that Raia acted in self-defense, he intended to harm Pinette, Matthews and Patenaude and concluded that he was justified in doing so.

¶ 9 The Estates respond that even if self-defense does not usually indicate accidental and unintended conduct, Raia was negligent in his analysis of the danger posed by Pinette, Matthews and Patenaude. The negligent invocation of the right of self-defense caused the deaths, the Estates argue; because negligence is accidental and unexpected, Royal has a duty to indemnify in this situation. We have twice before answered substantially this same question. In both *Hanover Ins. Co. v. Crocker*, 1997 ME 19, 688 A.2d 928 and *Johnson v. Allstate*, 1997 ME 3, 687 A.2d 642, a third party claimant sought recovery for injuries resulting from the intentional acts of an insured, specifically sexual abuse by a male relative. *See Crocker*, 1997 ME 19, ¶ 2, 688 A.2d at 930, *Johnson*, 1997 ME 3, ¶ 2, 687 A.2d at 643. Both claimants, however, sought recovery under a homeowner policy by suing a female relative residing in the same household, arguing that she had been negligent in failing to prevent the abuse and that the policy covered the injuries attributable to that insured's negligence. *See Crocker*, 1997 ME 19, ¶¶ 2–3, 688 A.2d at 930, *Johnson*, 1997 ME 3, ¶¶ 3, 5, 687 A.2d at 643.

¶ 10 Because the negligent and intentional actors in *Crocker* and *Johnson* were different, even though the injuries were the same, coverage for the negligence turned upon the policy language. *See Crocker*, 1997 ME 19, ¶ 8, 688 A.2d at 931; *Johnson*, 1997 ME 3, ¶ 6, 687 A.2d at 644. In *Crocker*, the policy excluded only the injuries caused by the intentional acts of "the insured," thereby permitting coverage to extend to injuries negligently caused by another insured. *See Crocker*, 1997 ME 19, ¶ 8, 688 A.2d at 931. In *Johnson*, however, the policy excluded coverage for injuries arising from the intentional act of "any insured," thereby barring coverage for each insured under the policy. *See Johnson*, 1997 ME 3, ¶ 1, 687 A.2d at 644.

¶ 11 The present case differs from *Crocker* and *Johnson* in that there is only one insured. Raia acted both intentionally and negligently in causing the injuries allegedly covered under the policy. Raia's stipulated unreasonable belief that he was entitled to act in self-defense is the equivalent of the negligence alleged in *Crocker* and *Johnson;* as in those cases, the injuries were caused by the intentional act while the negligence lay in the breach of a duty of care that would have prevented that intentional act. Where there is only one insured inflicting the same injuries, however, there can be no question of separating the negligence of one insured from the intentional act of another. All injuries to Pinette, Matthews and Patenaude were intended by Raia, "the insured," and are therefore excluded under the policy, despite Raia's negligence in forming his belief.

The entry is:

Judgment affirmed.