STATTE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                           CIVIL ACTION
                                         Docket No. CV-01-82  JLH-PEN-8-12-2002

FILED & ENTERED
SUPERIOR COURT
AUG 1 2 2002
PENOBSCOT COUNTY

Daniel M. Cliff,
        Plaintiff


        v.                               Decision and Judgment


Vaughn Thibodeau,                        DONALD L. GARBRECHT
        Defendant                        LAW LIBRARY


                                         NOV 1 2002



        Hearing on the complaint and counterclaim was held on June 4, 2002. By

agreement of the parties, the trial record was left open to allow the submission of

depositions of trial witnesses. Accordingly, the parties filed the deposition transcripts of

John Baker, M.D., Jay Raisen, M.D., Sandra Carruthers and Cathy Cliff, and the court

has reviewed that material.[1] Additionally, the parties submitted written argument, which

the court has also considered.

**A. Liability claims**

        Based on the record evidence, the court makes the following findings of fact

germane to the parties' respective liability claims.

        On May 17, 1999, the plaintiff was working as a supervisor at a construction site

located on the Odlin Road in Hampden. He and other employees of the construction

firm, H.E. Cliff, had opened a ditch running across the road and were in the process of

laying a water line in the ditch. Because the construction work rendered the road

---

[1] The court notes that the plaintiff apparently chose not to be present through counsel at
the deposition of Dr. Raisen. Further, the transcript of Cathy Cliff's deposition reveals
that the deposition was not completed and that the parties intended to resume that
proceeding at a future date. The parties' post-trial submissions do not indicate that the
deposition was resumed, and the court thereby treats the June 12 deposition proceeding as
complete.

1

impassable, it was blocked off. During the course of this construction work, the defendant – who is a part owner of a different construction and contracting firm – drove a dump truck onto the Odlin Road. The truck was loaded with gravel. The construction site was located roughly 600 yards from the intersection where the defendant turned onto the Odlin Road. The weather was clear, there were no impediments to visibility, and the construction site was visible from the intersection. The defendant drove down the Odlin Road, and in doing so, he passed by a detour sign, a flagger, several sets of wooden barricades (on which at least one "ROAD CLOSED" sign was posted), several trucks parked in the road near the location of the ditch and a pile of gravel in the road also near the ditch. The defendant also saw that several people were working in the area of the ditch. When the defendant drove near the ditch itself, he attempted to turn the truck around. In doing so, however, he backed partially into the ditch and was unable to drive out. The ditch was four or five feet deep, and the grade from road level to the bottom of the ditch was steep. The truck did not appear to be stable in that position.

An employee of H.E. Cliff walked over to the defendant and said, "Let's get you out." A paving contractor who was working nearby also went over to the defendant. The defendant acknowledged to both of the workers that he had been less than careful in his efforts to maneuver the truck near the ditch. The H.E. Cliff employee left the defendant to return to his own duties. He then told the plaintiff what he had seen. The plaintiff himself walked over to the scene (either before the paving contractor was present or while he was there), and the defendant told him that he "goofed." The plaintiff offered to help extract the truck from its predicament. The paving contractor went to get a chain that could be used to pull the defendant's truck out of the ditch. The plaintiff went back to his work area on the other side of the Odlin Road but returned to the defendant's truck shortly thereafter. Because the plaintiff was responsible for the safety of the other H.E. Cliff employees, he harbored concerns about risks the truck might pose and wanted to monitor the situation.

When the plaintiff approached the defendant for the second time, the plaintiff conveyed his concerns about the risk that he believed were caused by the truck in the ditch. The two then had a brief exchange about the defendant's operation of the dump truck and the road closure. Although the plaintiff was serious during the course of this

2

conversation, he did not threaten or intimidate the defendant. The plaintiff then looked away because he was distracted by the engine noise created by some nearby construction equipment. While he was not looking at the defendant, the defendant punched the plaintiff several times in his head and neck, and knocked the plaintiff onto the ground. The defendant, who was larger than the plaintiff, jumped on top of the plaintiff and continued to strike him. While on the ground, one of the plaintiff's arms was pinned underneath the defendant. The plaintiff then was able to get onto his knees and hit the defendant. Two H.E. Cliff employees ran over to the scene of the altercation as soon as they noticed it, and they were able to restrain both men. The defendant was escorted away from the area by the paving contractor, and his wife eventually picked him up and drove him home.

"An actor is subject to liability to another for battery if . . . he acts intending to cause a harmful or offensive contact with the person of the other . . . and . . . an offensive contact with the person of the other directly or indirectly results." RESTATEMENT (SECOND) OF TORTS § 18(1) (1965). Here, the record clearly establishes that both parties committed a battery against the other. The defendant, however, initiated the physical altercation between the two. He argues that he acted in self-defense. However, the evidence does not support this contention. In a civil setting such as this, "[a]n actor is privileged to use reasonable force, not intended or likely to cause death or serious bodily harm, to defend himself against the unprivileged harmful or offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him." *Id.*, § 63(1). Here, the plaintiff in fact was not about to commit a battery against the defendant, and if the defendant had an apprehension of such an act, that apprehension was not reasonable. The plaintiff advised the defendant of his concerns that the truck posed a danger to nearby workers immediately prior to the moment that the defendant chose to punch him, and when the defendant first hit the plaintiff, the plaintiff was looking away. Self-defense is a justification for conduct that otherwise is actionable. *Royal Insurance Co. v. Pinette*, 2000 ME 155, ¶ 8, 756 A.2d 820, 824. It is therefore an affirmative defense that must be proven by its proponent. *Cf.* M.R.Civ.P. 8(c) (matters of avoidance characterized as affirmative defenses). Here, the defendant has not proven that

his conduct was justified as a form of self-defense, and, in fact, the evidence affirmatively establishes the contrary.

The defendant argues alternatively that even if his conduct was not justified as self-defense and that the plaintiff was entitled to use force in his own defense, the plaintiff's conduct exceeded the force that was reasonably necessary to protect his own interests and that he therefore bears some liability for the injuries he inflicted on the defendant. *See* RESTATEMENT (SECOND) OF TORTS at §§ 70(1), 71(a). Here, the evidence reveals that the plaintiff's conduct did not exceed the amount of force that was reasonably necessary to protect himself. The defendant first hit the plaintiff with a sucker punch, knocked the plaintiff onto the ground with a combination of blows and continued to hit the plaintiff while the plaintiff was down and partially restrained. The plaintiff struck the defendant only while the defendant was hitting or attempting to hit him, and the altercation ended when others intervened between the parties. At that time, the parties ended their aggression simultaneously. Under these circumstances, the plaintiff's actions in defending himself were not unreasonable.

## B. Damages

The plaintiff seeks an award of compensatory damages on the basis of several types of injuries he alleges were caused by the defendant's conduct, and he also seeks an award of punitive damages.

The battery inflicted on the plaintiff left him with various cuts and bruises, an injury to his neck and a muscle spasm in his shoulder. All of these injuries were proximately caused by the defendant's conduct. Although the plaintiff's treating physician, Dr. Baker, testified that the neck and shoulder (trapezius) problems can be caused by other kinds of events, in this case the plaintiff has established by a preponderance of the evidence that they were caused by the defendant.

The cuts and bruises have healed over time without complication.

The orthopedic problems have persisted over time. Even though they continue to bother the plaintiff by creating headaches and modestly limiting his movement, he is not receiving ongoing medical treatment for them, and he has sought treatment in the past only on a sporadic basis. Common, over-the-counter forms of ibuprofen provide him with some relief. He did not lose any time at work because of those injuries. Indeed,

4

after examining the plaintiff four days after the assault, Dr. Baker expected the plaintiff's injuries to resolve within several weeks. The plaintiff wears a shoulder brace, but the record does not disclose who recommended or prescribed the brace for him. During a limited period of time, he received physical or massage therapy, which made him more comfortable. However, he did not engage in that therapy when it was first recommended to him. The court treats this as evidence that the plaintiff's physiological problems were not particularly debilitating. There is no evidence of permanent impairment.

The plaintiff also alleges that, as a result of the defendant's conduct, he suffered tinnitus, vertigo and hearing loss. The record does not support that allegation. Any temporal connection between the assault and those physical problems is diluted, because the plaintiff was unable to disclose to his physician when those symptoms arose. He has had those problems prior to the April 1999 assault. Most importantly, a medical specialist who examined the plaintiff for those specific problems was unable to conclude that the tinnitus, vertigo and hearing loss were caused by the battery.

The plaintiff's medical expenses associated with the compensable injuries are roughly $4,000.

On the basis of this evidence, the court awards the plaintiff total compensatory damages of $10,000.

The plaintiff has established by clear and convincing evidence that the defendant's conduct was motivated by actual or implied malice. *See Tuttle v. Raymond*, 494 A.2d 1353, 1361, 1363 (Me. 1985). In the circumstances of this case, the battery committed by the defendant is an appropriate basis for the imposition of punitive damages because of the penal and deterrent goals served by such an award. In assessing the amount of punitive damages, the court has considered the violent and unprovoked nature of the defendant's conduct and his failure to take responsibility for his conduct. The award of punitive damages must also account for the fact that the plaintiff suffered real injuries but that those injuries were of a limited magnitude. Under these circumstances, the court assesses punitive damages of $2,000.

The entry shall be:

For the foregoing reasons, judgment on the complaint is entered for the plaintiff in the amount of $10,000 in compensatory damages, $2,000 in punitive damages and interest at the statutory rate. On the counterclaim, judgment is entered for the counterclaim defendant (the plaintiff). The plaintiff is awarded his costs of court.

Dated: August 9, 2002

Justice, Maine Superior Court
Jeffrey L. Hjelm

Date Filed __5/2/2001__ ___PENOBSCOT___ , Docket No. ____ **CV-2001-82**

County

Action __PERSONAL INJURY__ COUNTERCLAIM

ASSIGNED TO JUSTICE JEFFREY L. HJELM

|  |  |
|---|---|
| DANIEL M. CLIFF | VAUGHN THIBODEAU |

VS.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| GRAY & PALMER<br>6 STATE STREET, SUITE 407<br>BANGOR ME 04401-5104<br>BY: William N. Palmer, Esq. | GROSS MINSKY & MOGUL<br>P O BOX 917 - 23 Water Street<br>BANGOR ME 04402-0917<br>BY: Edward W. Gould, Esq. |
| | Michael Rair, Esq. Co-Counsel<br>P O BOX 2580<br>Bangor ME 04402-2580 |

| Date of Entry | |
|---|---|
| 5/2/01 | Complaint filed. |
| 5/2/01 | Case File Notice Postcard forwarded to Plaintiff's counsel. |
| 5/24/01 | Acceptance of Service by Edward Gould, Esq. on behalf of Deft. Vaughn Thibodeau filed. (s.d. 3/21/01 |
| 6/4/01 | Answer filed by Defendant Vaughn Thibodeau. |
| 6/5/01 | Scheduling Order filed. Discovery deadline is March 1, 2002. (Hjelm, J.) Copy forwarded to attorneys of record. |
| 7/6/01 | Notification of Discovery Service filed by Defendant: Interrogatories Propounded upon the Plaintiff; Request for Production of Documents. |
| 7/10/01 | Entry of Appearance of Michael Rair, Esq. on behalf of Defendant Vaughn Thibodeau filed. |
| 7/10/01 | Motion to Amend Answer filed by Defendant. |
| 7/10/01 | Memorandum Supporting Motion to Amend Answer filed by Defendant. |
| 7/10/01 | Answer and Counterclaim filed by Defendant. |
| 7/12/01 | Copy of Scheduling Order dated 6/5/01 forwarded to Atty. Michael Rair. |
| 7/13/01 | Upon Defendant's Motion to Amend Answer – Motion granted. Answer amended to include counterclaim. (Hjelm, J.) Copy forwarded to attorneys of record. |
| 7/17/01 | File presented to Justice Hjelm for review. |
| 7/17/01 | File returned by Justice Hjelm. Order issued. |

-Over-